IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN PLATT,<br><br>      Plaintiff,<br><br>v.<br><br>ESEKIA AFATASI,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br>Case No. 2:14-CV-345 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff has failed to respond to the Motion and the time for doing so has expired. For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

This action arises out of Plaintiff's arrest on July 7, 2013. In early July 2013, the Metro Gang Unit of the Unified Police Department of Greater Salt Lake began actively searching for Plaintiff. Plaintiff was a known gang member with several outstanding arrest warrants. He was also wanted for questioning for a kidnapping, burglary of a dwelling, and an assault on a police officer that occurred during the first week of July 2013.

Officers were provided information on where Plaintiff might be located. Officers went to the location and a stop was conducted on a vehicle in which Plaintiff was a passenger. The vehicle stopped and officers approached the vehicle shouting commands at Plaintiff to show his hands and exit the vehicle. Plaintiff ignored the officers' commands and began to struggle with the driver of the vehicle. Plaintiff attempted to gain control of the vehicle, grabbing the steering

1

wheel, and revving the engine. The tires of the truck were spinning and beginning to smoke. Officers were concerned that they would have been hit had the truck been in gear.

An officer then shot out the driver's side tires, at which point one of the occupants of the vehicle jumped out. Plaintiff then reached over and shut the door of the vehicle, locking it. Officers continued to shout commands at Plaintiff, which he ignored. During this time, Plaintiff engaged in a series of furtive movements inside the vehicle.

Detective Simonelli then broke one of the truck's windows. A K-9 unit was deployed in the vehicle by Sergeant Reyes to help apprehend Plaintiff. The dog latched on to Plaintiff's leg. Despite being bitten by the dog, Plaintiff refused to comply with the officers' commands. At that point, Officer Afatasi administered several "distraction strikes" to Plaintiff's upper shoulder and face, but Plaintiff continued to resist.

Officers were finally able to remove Plaintiff from the truck. Once outside the truck, Plaintiff was placed on the ground. Officers were able to get one of Plaintiff's arms free to place handcuffs on him. However, Plaintiff kept his other arm under his body, continuing to resist efforts to handcuff him. Officer Van Emmerik then placed his knee into the side of Plaintiff's neck to gain compliance. A number of officers wrestled with Plaintiff until they were finally able to get him into custody.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] In considering whether a genuine dispute of material fact exists, the Court determines whether a

---

[1] Fed. R. Civ. P. 56(a).

reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

> If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law. If it has not, summary judgment is not appropriate, for [n]o defense to an insufficient showing is required.[4]

By failing to respond, Plaintiff "waives the right to respond or to controvert the facts asserted in the summary judgment motion."[5] "The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."[6]

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."[7] The Supreme Court has held that the Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[8] "In determining

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[4] *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002) (internal quotation marks omitted).

[5] *Id.* at 1195.

[6] *Id.*

[7] *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

[8] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party."⁹  However, "a plaintiff's version of the facts must find support in the record."¹⁰

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."¹¹  The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality."¹²  "The dispositive question is whether the violative nature of particular conduct is clearly established.  This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."¹³  This is especially true "in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."¹⁴

## III. DISCUSSION

Plaintiff brings two claims: unlawful restraint and excessive force.  The Court considers both claims under the Fourth Amendment.

---

⁹ *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

¹⁰ *Id.*

¹¹ *Mullenix v. Luna*, ---U.S.---, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted).

¹² *Id.* (internal quotation marks omitted).

¹³ *Id.* (internal quotation marks and citation omitted).

¹⁴ *Id.* (internal quotation marks omitted).

4

A.  UNLAWFUL RESTRAINT

Plaintiff's first claim is for "unlawful restraint of anothers [sic] personal liberty."[15] The Court construes this claim as challenging his arrest.

The Tenth Circuit has held that "an official charged with the duty of executing a facially valid court order enjoys absolute immunity from liability for damages in a suit challenging conduct prescribed by that order."[16] The undisputed evidence shows that Plaintiff had a number of valid warrants out for his arrest. Thus, Defendant is entitled to absolute immunity on Plaintiff's claim related to the execution of those warrants and summary judgment is appropriate.

Plaintiff not only complains about the fact that he was arrested, but also as to the manner in which he was taken into custody. While absolute immunity protects Defendant from liability for executing a valid warrant, it does not permit Defendant to execute the arrest with excessive force.[17] Therefore, the Court turns to Plaintiff's excessive force claim.

B.  EXCESSIVE FORCE

"Under well-settled Supreme Court precedent, a law-enforcement officer's 'right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it.'"[18] "The degree of physical coercion that law enforcement officers may use is not unlimited, however, and 'all claims that law enforcement officers have used excessive force . . .

---

[15] Docket No. 6, at 4.

[16] *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989).

[17] *Martin v. Bd. of Cty. Commr's of Cty. of Pueblo*, 909 F.2d 402, 404–05 (10th Cir. 1990).

[18] *A.M. v. Holmes*, 830 F.3d 1123, 1151 (10th Cir. 2016) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

5

in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .'"[19]

This analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."[20] In making this determination, the Court considers factors like "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[21]

"[W]hen a defendant asserts the defense of qualified immunity in response to a plaintiff's excessive-force claim, the 'plaintiff is required to show that the force used was impermissible (a constitutional violation) *and* that objectively reasonable officers could not have not thought the force constitutionally permissible (violates clearly established law).'"[22]

As set forth above, the officers employed a significant amount of force when taking Plaintiff into custody. Officer Afatasi used a series of "distraction strikes" to Plaintiff's shoulder and head in an effort to gain compliance. Officers then pulled Plaintiff from the vehicle and used additional force to place him in handcuffs. However, when viewed under the totality of the circumstances, the Court concludes that no constitutional violation occurred here.

First, the Court considers the severity of the crime at issue. As discussed, Plaintiff had a number of warrants out for his arrest. Those warrants included, among other things, theft, use or

---

[19] *Cortez v. McCauley*, 478 F.3d 1108, 1125 (10th Cir. 2007) (quoting *Graham*, 490 U.S. at 395).

[20] *Graham*, 490 U.S. at 396 (internal quotation marks omitted).

[21] *A.M.*, 830 F.3d at 1151 (quoting *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007).

[22] *Id.* (quoting *Cortez*, 478 F.3d at 1128).

possession of drug paraphernalia, failure to appear, and failure to stop or respond at the command of a peace officer.  In addition to these warrants, Plaintiff was wanted for questioning for kidnapping, robbery, and assaulting a police officer.  The events giving rise to the need for questioning, which later led to the issuance of a warrant, occurred just a few days prior to the arrest.  This factor weighs in favor of Defendant.

Second, the evidence shows that Plaintiff posed a substantial, immediate risk to the safety of the officers and others.  Plaintiff was a documented gang member with a history of fleeing from police.  During the stop, Plaintiff repeatedly ignored the commands of police officers to show his hands and exit the vehicle.  Plaintiff attempted to gain control of the vehicle by grabbing the steering wheel and revving the engine.  The officers had a legitimate fear that Plaintiff may attempt to hit them with the vehicle.  Plaintiff also engaged in a number of furtive movements, which raised the possibility that he was reaching for a weapon.  Thus, Plaintiff posed a serious danger to those around him and this factor too weighs in favor of Defendant.

Third, the evidence shows that Plaintiff was actively resisting arrest.  Plaintiff repeatedly refused to comply with officers' commands while in the truck.  Plaintiff attempted to gain control of the vehicle and was revving the engine.  Even when officers gained access to the vehicle and removed Plaintiff from it, Plaintiff continued to resist efforts to place him in handcuffs.  This required Officer Van Emmerik to place his knee on Plaintiff's neck to gain compliance.  Once handcuffed, it appears that the officers' use of force ended.  Thus, this factor also weighs in favor of Defendant.  In sum, all of the *Graham* factors demonstrate that the officers' use of force was reasonable under the circumstances.  Even if not reasonable, Officer

Afatasi is nonetheless entitled to qualified immunity because Officer Afatasi's actions did not violate clearly established law.

Plaintiff also complains about being bitten by the K-9 unit that was deployed. The record reflects that Sgt. Reyes deployed the dog, not Officer Afatasi. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."[23] Because Officer Afatasi was not involved with the deployment of the dog, he cannot be held liable under § 1983.

Even if Plaintiff could show that Officer Afatasi was personally involved in deploying the K-9, he cannot show that such action violated a clearly established constitutional right. In *Thomson v. Salt Lake County*, the Tenth Circuit analyzed whether deployment of a dog constituted unconstitutional excessive force.[24] In that case, Mr. Thomson threatened his wife and fled their home. Officers knew that Mr. Thomson was armed in a residential area, actively trying to avoid detection. In these circumstances, the use of a dog to locate and apprehend Mr. Thomson did not constitute excessive force.

The same result is warranted here. As set forth above, Plaintiff was sought by law enforcement on numerous active warrants and was wanted for questioning on a number of serious charges. While officers did not know whether Plaintiff was armed, he nevertheless posed an immediate danger. He struggled with officers and was actively resisting arrest. In these circumstances, the use of the dog to subdue Plaintiff did not constitute excessive force in

---

[23] *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).

[24] *Thomson*, 584 F.3d at 1317.

violation of the Constitution. To the extent that it did, such a violation was not clearly established. Thus, Defendant is entitled to qualified immunity.

In addition to these instances, Plaintiff's Complaint alleges that his clothes were removed, that he was kicked and hit with a baton, and that an officer rubbed his face on the road. While the Court must review the facts in the light most favorable to Plaintiff as the nonmoving party, those facts must find some support in the record. Since Plaintiff failed to respond to Defendant's summary judgment motion, he has failed to provide such proof. The allegations in Plaintiff's Complaint are not enough at this stage. The only evidence in the record, which was supplied by Defendant, does not support Plaintiff's allegations. Therefore, there is insufficient evidence in the record to support Plaintiff's claim that the officers used these types of force and the Court need not consider whether such conduct would violate a clearly established constitutional right.

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 18) is GRANTED.

DATED this 9th day of April, 2018.

BY THE COURT:

_____
Ted Stewart
United States District Judge